# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| INVESTCOM CONSORTIUM HOLDING SA and SCANCOM LIMITED, <br><br> Plaintiffs, <br><br> vs. <br><br> CHRISTIAN K. WILMOT; WCW INTERNATIONAL, INC.; GRAND VIEW MANAGEMENT LIMITED; and RICHMOND AGGREY; <br><br> Defendants. | § § § § § § § § § § § § § § § <br><br> CIVIL ACTION NO. 4:08-CV-2786 |

## PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION

Investcom Consortium Holding SA ("Investcom") and Scancom Limited ("Scancom") file this application for a preliminary injunction to enjoin Grand View Management Limited ("Grand View"), and Richmond Aggrey ("Aggrey") from pursuing an injunction against Investcom and Scancom in the civil courts of Ghana that would prevent Investcom and Scancom from pursuing this lawsuit.

### Preliminary Statement

Investcom and Scancom brought this lawsuit to confirm Investcom's arbitration award against Aggrey under the New York Convention, and to recover the damages they have incurred and continue to incur because of Defendants' fraudulent scheme to usurp 20 percent of Scancom's stock.

1

HN72947.7

On Monday, November 17, 2008, the High Court of Justice in Ghana will hold a hearing on Scancom's and Investcom's motion to stay an anti-suit injunction entered against them in December 2007 to prevent them from pursuing arbitration against Aggrey in the London Court of International Arbitration ("LCIA"). *See* Exhibit 14, Declaration of Nana Yaw Ntrakwah. At that hearing, Aggrey and Grand View will almost certainly seek to expand that injunction to restrain Investcom and Scancom from pursuing this lawsuit, or will seek a new injunction for that purpose. If Aggrey and Grand View obtain such an injunction against Investcom and Scancom, it will effectively terminate this action, causing irreparable harm to Investcom and Scancom and interfering with this Court's exercise of its jurisdiction.

Therefore, to protect this Court's jurisdiction, this Court should enjoin Aggrey and Grand View from pursuing any injunction from the Ghanaian courts that would prevent Investcom's and Scancom's participation in this lawsuit. Plaintiffs request that the Court grant oral argument on this motion.

## I. Facts

Scancom was incorporated in Ghana on April 14, 1994 as a mobile telecommunications company. In January 1996, after Scancom secured a license from the Ghanaian government to operate in Ghana, Investcom became a shareholder in Scancom pursuant to a Shareholders Agreement. Under the

2

Shareholders Agreement, all Scancom shareholders agreed that any dispute concerning the Shareholders Agreement would be arbitrated in London before the LCIA. *See* Exhibit 3, Shareholders Agreement at § 13.5.

In April 1996, the Ghanaian Ministry of Transport and Communications (the "Ministry") suddenly and unexpectedly revoked Scancom's authorization to operate in Ghana claiming that Scancom did not have enough Ghanaian shareholders, and suggesting that if Aggrey (an acquaintance of the Minister of Transport and Communications) were made a shareholder, the problem would be resolved. Scancom's shareholders and Aggrey therefore executed an amendment to the Shareholders Agreement (the "Amendment Agreement"), which incorporated the Shareholders Agreement, making Aggrey the owner of 20 percent of Scancom. *See* Exhibit 4, Amendment Agreement. Aggrey paid nothing for his shares, but borrowed $178,200 from Investcom to cover the cost of the shares in a written agreement. *See* Exhibit 5, Promise to Repay. Aggrey also assumed an obligation to provide working capital to Scancom of nearly $1.4 million.

In May 1999, when Scancom had yet to make a profit and was still struggling to survive, Aggrey formally resigned as both a Scancom board member and shareholder. At the time of his departure, Aggrey had never repaid the loan to Investcom, and never contributed a penny in working capital. Aggrey sold his shares to Grand View, a Cayman Islands company owned and controlled by his

cousin, Christian K. Wilmot ("Wilmot"), whom Aggrey had nominated to serve on Scancom's board. Grand View purchased Aggrey's entire 20 percent interest in Scancom for cedis 20,000,000 (which in 1999 was approximately $5,600-$8,500). See Exhibit 6, Shares Transfer Agreement.

In August 1999, after Grand View failed to contribute to a required capital call, Grand View's interest in Scancom was diluted from 20 percent to 1.83 percent. In September 1999, Wilmot filed a lawsuit in Ghana's High Court of Justice on behalf of Grand View disputing the legitimacy of the capital call and seeking a declaration that Grand View was entitled to 20% of the shares in Scancom. The next day, on September 7, 1999, Scancom held Board and shareholders meetings in which it was agreed that it was in Scancom's best interests to settle the litigation with Grand View so that the company could focus on its expanding business. As part of a global settlement (the "Global Settlement"), Investcom agreed to transfer 338,000,000 additional shares to Grand View in consideration for Grand View's agreeing to drop the litigation and sign a Memorandum of Undertaking (the "Undertaking"). This increased Grand View's interest to 5 percent of Scancom. On September 10, 1999, Wilmot executed the Undertaking on behalf of Grand View, which reads as follows:

> By THIS MEMORANDUM OF UNDERTAKING We of Grand View Management Limited represented by Chris Wilmot do hereby irrevocably confirm that the transfer of shares in Scancom Limited held by Richmond Aggrey to

4

> Grand View Management Limited and the subsequent issue of [sic] new Share Certificate to Grand View Management Limited thereby extinguishes any rights and/or claims whatsoever that Richmond Aggrey may now have or hereafter have in respect of the shares held by him and hereby undertake to indemnify Scancom Limited … and all individual shareholders thereof against any liability whatsoever that Scancom Limited or its individual shareholders may incur as a result of any claim by Richmond Aggrey.
>
> We further hereby confirm that all previous Board and Shareholders Minutes of Scancom Limited up to date hereof including, but not limited to, the Capital Call made pursuant to the Shareholders Resolution of May 31, 1999 is a true and accurate account of facts and event indicated therein.

*See* Exhibit 7, Memorandum of Undertaking.

In December 1999, Wilmot expressed a desire to sell Grand View's shares in Scancom. After a day-long arms-length negotiation, Grand View and Investcom entered into a Share Transfer Agreement (the "December Share Transfer Agreement"), pursuant to which Grand View agreed to sell Investcom its 5-percent share in Scancom for $500,000. *See* Exhibit 8, December Share Transfer Agreement. At Wilmot's instruction, Investcom paid Wilmot $3,000 in cash, transferred $297,000 to Wilmot's personal bank, and transferred the remaining $200,000 to WCW International, Inc. (a company owned and controlled by Wilmot) in Houston. See Exhibit 9, Citibank Payment Records.

By early 2006, Scancom's and Investcom's fortunes had turned for the better, and both companies were enjoying unprecedented success. In March 2006, apparently following the news of Scancom's and Investcom's success, Aggrey

5

reappeared, and wrote to Scancom demanding that his original 20 percent share — which he had sold to Grand View in 1999 — be returned to him. In July 2006, after Scancom refused Aggrey's outrageous demands, Aggrey filed an action against Scancom, Investcom, and Grand View in the High Court of Justice in Ghana (the "Ghana Action"), seeking restoration of his original interest in Scancom. *See* Exhibit 10, Statement of Claim; Exhibit 14.

Even though Grand View was named as a defendant in the Ghana Action, Grand View filed pleadings and took steps in that litigation which clearly aligned it with Aggrey. For example, the responsive pleading Grand View filed in the Ghana Action admitted every material allegation of Aggrey's claim and made additional allegations against Scancom and Investcom, even though those allegations were inconsistent with contractual and legal documents previously executed by Grand View. *See* Exhibit 11, Grand View's Statement of Defense.

Following some initial procedural wrangling in the Ghanaian courts, Investcom filed a Request for Arbitration with the London Court of International Arbitration ("LCIA") in January 2007, seeking to resolve the dispute through arbitration as required by the explicit terms of the Shareholders Agreement, as incorporated into the Amendment Agreement. Exhibit 14. The following month, the law firm representing Aggrey sent a letter to the LCIA Tribunal, requesting that the arbitration not proceed on the grounds that the dispute referred to arbitration

was also the subject of proceedings in Ghana. After several communications with the parties and requests for submissions on the issues raised by the law firm's letter, the LCIA Tribunal rejected Aggrey's request to stay the arbitration. Exhibit 12, Procedural Order.

While the LCIA Arbitration was pending, Aggrey applied for an anti-suit injunction in the Ghana Action to restrain Investcom from pursuing the LCIA Arbitration. Exhibit 1. Grand View also applied for an anti-suit injunction, but withdrew its application after it was removed as a party to the LCIA Arbitration. Aggrey pursued his application, however, which was granted on December 6, 2007. Exhibit 14. That anti-suit injunction restrained Investcom from taking any further action in the arbitration. Exhibit 2.

By the time the injunction issued, the LCIA Tribunal had already heard the evidence and taken the matter under submission, and thus no further participation was required by Investcom in order for the LCIA Tribunal to make its ruling. The LCIA Tribunal issued its Partial Final Award on February 15, 2008. *See* Exhibit 13, Partial Final Award; Exhibit 14. As part of that award, the LCIA Tribunal reached the following conclusions:

- No trust arrangement existed relating to Aggrey's shares or interest in Scancom.
- Aggrey transferred the legal and beneficial interest in his shares in Scancom to Grand View.
- Grand View transferred the legal and beneficial interest in its shares in Scancom to Investcom.

- Aggrey has no claim against Investcom in law or in equity in relation to those shares.
- Aggrey breached the arbitration clause of the Shareholders Agreement by pursuing his claim against Investcom in the Ghanaian courts.

Exhibit 13 at p. 45. As a result of the Ghanaian anti-suit injunction, however, Investcom has been unable to continue its participation in the arbitration. The only steps remaining to be taken by the LCIA Tribunal, however, are to assess the amount of costs and interest to be awarded, and determine the amount of Investcom's damages for Aggrey's breach of the arbitration clause of the Shareholders Agreement. *Id.* at p. 44, paras. 222, 226-27.

Investcom and Scancom initiated the present lawsuit in this Court ("the U.S. Action") on September 18, 2008, seeking an order confirming the LCIA arbitral award pursuant to the New York Convention (9 U.S.C. § 207), and also seeking a declaratory judgment and damages for Defendants' breaches of their contracts with Investcom and Scancom. Exhibit 15, Ryan Declaration. 1On October 15, 2008, Aggrey filed a motion to dismiss alleging, among other things, that the Court lacked personal jurisdiction over him.[1] Plaintiffs filed their First Amended Complaint on October 29, 2008.

---

[1] Before it may issue an injunction when there is a pending motion to dismiss for lack of personal jurisdiction, the Court must first determine that it has personal jurisdiction over the party to be enjoined. *Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470-71 (5th Cir.1985). When a district court considers a motion to dismiss without an evidentiary hearing while there is a pending motion for preliminary injunction, the plaintiff's burden is met by the presentation of a prima facie case for personal

## II. Law and Analysis

### A. The usual preliminary injunction factors do not apply to anti-suit injunctions

The customary factors that are used to analyze the propriety of granting a preliminary injunction are whether: (1) there is a substantial likelihood that the moving party will prevail on the merits, (2) there is a substantial threat that the moving party will suffer irreparable harm in the absence of an injunction, (3) the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the non-moving party, and (4) the injunction will not disserve the public interest. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003).

However, an injunction that is aimed at restraining a foreign proceeding, either completely or in part, is a subspecies of a preliminary injunction, and so the suitability of such relief depends on considerations unique to anti-suit injunctions. *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990-91 (9th Cir. 2006); *Karaha Bodas*, 335 F.3d at 364. Therefore, the four general prerequisites applicable to preliminary injunctions in general do not apply to an anti-suit

---

jurisdiction. *DeMelo v. Toche Marine Inc.*, 711 F.2d 1260 (5th Cir. 1983), *citing Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 332 (5th Cir.1981).

injunction.[2]  *Karaha Bodas*, 335 F.3d at 364 n.19; *Commercializadora Portimex, S.A. de CV v. Zen-Noh Grain Corp.*, 373 F.Supp.2d 645, 649 (E.D. La. 2005).

### B. The Court must balance domestic judicial concerns (such as protection of its jurisdiction) against principles of international comity

A federal court may enjoin persons subject to its jurisdiction from prosecuting actions in foreign courts. *Karaha Bodas*, 335 F.3d at 364; *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir. 1996).  The general rule is that proceedings in different jurisdictions should be allowed, at least until one court renders a final judgment. *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 926-27 (D.C. Cir. 1984); *Karaha Bodas*, 335 F.3d at 372 n.59.

An injunction against the prosecution of a foreign proceeding may be appropriate when the foreign litigation would: (1) frustrate a policy of the forum issuing the injunction, (2) be vexatious or oppressive, (3) threaten the issuing court's *in rem* or *in personam* jurisdiction, or (4) cause prejudice or offend other equitable principles. *Kaepa, Inc.*, 76 F.3d at 627 n. 9; *China Trade & Dev. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987) (injunction appropriate to protect court's *in personam* jurisdiction).

Before issuing an injunction directed at a foreign proceeding, however, the Court must "balance domestic judicial interests against concerns of international

---

[2] Although the traditional preliminary injunction factors do not apply, Plaintiffs would be entitled to a preliminary injunction under either the traditional standard or the anti-suit injunction standard.

10

comity." *Karaha Bodas*, 335 F.3d at 366. The Fifth Circuit has adopted a test that weighs the need to protect the court's jurisdiction against the need to defer to principles of international comity. *Id*. (citing *Kaepa, Inc.*, 76 F.3d at 627). In applying the test, the Fifth Circuit has rejected the approach taken by some other circuits, which "elevates principles of international comity to the virtual exclusion of essentially all other considerations." *Kaepa, Inc.,* 76 F.3d at 627. Instead, the Fifth Circuit has noted that "notions of comity do not wholly dominate [the] analysis to the exclusion of these other concerns." *Karaha Bodas Co*., 335 F.3d at 366.

C.  **The preliminary injunction sought protects the Court's jurisdiction and preserves principles of international comity**

While the relief Investcom and Scancom seek is in the nature of an anti-suit injunction, it is not a traditional anti-suit injunction, because the relief sought is narrower than a typical anti-suit injunction. Investcom and Scancom do not seek to terminate or even affect the Ghana Action; they merely seek to prevent Aggrey and Grand View from interfering with this Court's jurisdiction. A typical anti-suit injunction would completely enjoin a litigant from initiating or prosecuting a civil action in a foreign jurisdiction, and it thus would be a complete restraint on a foreign tribunal's jurisdiction. That type of anti-suit injunction essentially gives the issuing court exclusive jurisdiction over a dispute, something which is generally

11

disfavored.  *See Laker Airways Ltd.*, 731 F.2d at 926-27; *Karaha Bodas*, 335 F.3d at 372 n.59.

However, the anti-injunction injunction requested by Investcom and Scancom here is narrow and restrained.  It would only enjoin Aggrey and Grand View from pursuing an anti-suit injunction directed at this lawsuit, which would thus be a minimal restraint on the Ghana court's jurisdiction.  This injunction would ensure that this Court and the Ghana court each retain jurisdiction over the U.S. Action and the Ghana action, respectively, which is the state of affairs preferred under the *Karaha Bodas* analysis.  In contrast, if Aggrey and Grand View are allowed to obtain an anti-suit injunction against Investcom and Scancom, it would effectively terminate this action and thus divest this Court of its jurisdiction over the U.S. Action.

Because Aggrey and Grand View have both sought an anti-suit injunction before, and Aggrey has obtained one before, they will likely seek another injunction to restrain Investcom and Scancom from pursuing the U.S. Action.  *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 19 (1st Cir. 2004) (acknowledging that a court must consider the prior conduct of the parties, including "their good faith of lack thereof.").  And because there will be a hearing on the current injunction on Monday, November 17, 2008, the issue will be before the High Court of Justice and it could grant another injunction against

12

Scancom and Investcom before this Court has the opportunity to rule. Because Investcom and Scancom are parties to the Ghana Action, are present in Ghana, and subject to the jurisdiction of the High Court of Justice Ghana, they cannot disregard an anti-suit injunction issued that court without suffering the penalties for contempt of the Ghanaian court's order. Therefore, a Ghanaian court anti-suit injunction would effectively terminate the U.S. Action and preclude Investcom and Scancom from enforcing the Partial Final Award and obtaining the other relief they seek. Thus, irreparable harm will result if this Court does not grant a preliminary injunction enjoining Aggrey and Grand View from seeking such an injunction against Investcom and Scancom.

### 1. The preliminary injunction sought is needed to protect this Court's jurisdiction

Courts have the duty to protect their own jurisdiction, so that they can provide justice to parties subject to their jurisdiction. *Karaha Bodas*, 335 F.3d at 372; *Laker Airways*, 731 F.2d at 927, 929-30; *Kirby v. Norfolk S. Ry. Co.*, 71 F.Supp.2d 1363, 1371 (N.D. Ga. 1999). Thus, when a foreign tribunal seeks to assume exclusive jurisdiction over a dispute, an injunction may be necessary to protect a federal court's validly-invoked jurisdiction. *Gau Shon Co., Ltd. v. Bankers Trust Co.*, 956 F.2d 1349, 1356 (6th Cir. 1992); *Laker Airways*, 731 F.2d at 930. There are essentially two instances when this need will arise: (1) in *in rem* or *quasi in rem* actions, jurisdiction is threatened when a foreign court orders the

13

transfer of property to another location; and (2) in *in personam* actions, jurisdiction is threatened when a foreign proceeding attempts to terminate the United States action. *China Trade & Dev.*, 837 F.2d at 35.

The preliminary injunction requested here is narrowly tailored to ensure that the injunction only serves the limited purpose of protecting the Court's jurisdiction. *Republic of Phillipines Westinghouse Elec. Co.*, 43 F.3d 65, 75 (3d Cir. 1995) (stating that "courts in the United States [should] tailor their remedies to avoid undue interference with the domestic activities of sovereign nations."). The injunction would not restrain Aggrey or Grand View from continuing to participate in the Ghana Action. Investcom and Scancom only ask the Court to issue an injunction that protects this Court's jurisdiction by preventing a Ghanaian court from interfering with the U.S. Action.

2. **The preliminary injunction sought would preserve principles of international comity by allowing multiple lawsuits**

Comity is the recognition and respect that one sovereign nation affords the official acts of another sovereign nation, taking into account international duties and conveniences, as well as the rights of citizens and persons who are under the protection of its laws. *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895); *Karaha Bodas*, 335 F.3d at 371. Comity interests are only implicated when a case involves a public international dispute and when prior steps in resolving a dispute have

14

occurred in international fora. *Karaha Bodas*, 335 F.3d at 371; *Kaepa*, 76 F.3d at 627.

In this case, the interests of international comity implicated in the question of whether to issue the injunction are minimal, and are far outweighed by the need to prevent inequitable harm and protect the Court's jurisdiction. First, the present case does not involve public international issues. *Karaha Bodas*, 335 F.3d at 372; *Kaepa*, 76 F.3d at 627. Investcom, Scancom, Aggrey, and Grand View are all private individuals and entities and their dispute is based on private contracts. There is no public conflict between the United States, Ghana, or any other sovereign.

In addition, the requested injunctive relief is narrowly tailored to avoid implicating the interests of international comity. *See Westinghouse*, 43 F.3d at 75. An anti-injunction injunction will not deprive the Ghanaian court of jurisdiction or interfere with the Ghana Action; it would simply preserve this Court's jurisdiction. Therefore, granting the injunction would not be an attack on the judicial power of another sovereign nation, and there is thus no risk that the interests of international comity will be adversely affected by the requested anti-injunction injunction. *Karaha Bodas*, 335 F.3d at 373.

Further, it would not set an undesirable precedent if the anti-injunction injunction is granted, because the injunction would not dissolve mutual respect for

the judicial proceedings of sovereign nations or distort authority granted under a specific law. *Id*. Rather, the injunction would only serve to maintain the pro-comity rule that multiple proceedings in different jurisdictions should be allowed. *Laker Airways*, 731 F.2d 926-27.

### 3. The injunction sought would further the New York Convention by ensuring the prosecution of multiple lawsuits

Finally, following the Fifth Circuit's reasoning in *Karaha Bodas*, the injunction sought by Investcom and Scancom would further the interests and purposes of the New York Convention. In *Karaha Bodas,* which involved a suit to enforce a Swedish tribunal's arbitral award pursuant to the New York Convention, the Fifth Circuit vacated the district court's anti-suit injunction that was directed at ending an Indonesian action to annul the same arbitral award. *Id*. at 359-63. The Fifth Circuit's decision was heavily influenced by the framework and purposes of the New York Convention. *Id*. at 366-74. Because the New York Convention allows for and even assumes that there will be proceedings in multiple jurisdictions for the enforcement and annulment of an arbitral award, the Fifth Circuit found that concerns about the moving party's potential hardship and expense, the vexatious nature of the Indonesian action, the duplicative nature of the claims, and the need to protect the district court's jurisdiction did not outweigh the need to further the purposes of the New York Convention. *Id*. at 368-71. The Fifth Circuit stressed that the New York Convention's framework strengthened the concerns of

international comity by allowing multiple lawsuits in different jurisdictions. *Id.* at 371-74. Therefore, the Fifth Circuit ultimately concluded that the interests of international comity as expressed in the New York Convention outweighed the interest in preventing vexatious and oppressive litigation. *Id.* at 374.

In the present lawsuit, Investcom and Scancom's first cause of action is confirmation of the LCIA arbitral award pursuant to the New York Convention (9 U.S.C. § 207). Thus, by enjoining Aggrey and Grand View from pursuing and obtaining a Ghanaian anti-suit injunction and ensuring concurrent proceedings in foreign courts, the Court will promote the goals of the New York convention, and the interests of comity. *Id.* at 371-74. Conversely, if the Court does not issue an injunction, it will tacitly permit Aggrey and Grand View to obtain an anti-suit injunction directed at terminating the U.S. Action, and thus permit Aggrey and Grand View to extinguish all other lawsuits that have any relationship to the Ghana Action, even if those disputes are not identical to or duplicative of the Ghana Action. This would run counter to the purposes of the New York Convention. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 639 n.21 (1985) ("The utility of the Convention in promoting the process of international commercial arbitration depends upon the willingness of national courts to let go of matters they normally would think of as their own.").

### D.     The Court should not require Plaintiffs to provide security

Investcom and Scancom ask that the Court dispense with the obligation to provide security under Rule 65(c) of the Federal Rules of Civil Procedure. As entry of a preliminary injunction (1) is in aid of and will preserve the Court's jurisdiction, and (2) Aggrey and Grand View will suffer no costs and expenses, other than those already associated with defending this civil action, the Court may order that no security be provided. *See, e.g.*, *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 n.20 (5th Cir. 1996); *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978); *Magdison v. Duggan*, 180 F.2d 473, 479 (8th Cir. 1950); *ProBatter Sports, L.L.C. v. Joyner Techs., Inc.*, 463 F.Supp.2d 949, 958 (N.D. Iowa 2006). In the alternative, if the Court finds that security is warranted, Investcom and Scancom assert that only a nominal amount, no greater than $1,000.00, be imposed.

### III.     Conclusion

Aggrey and Grand View will almost certainly pursue and obtain an injunction in the Ghana Action enjoining Investcom and Scancom from participating in the U.S. Action. If Aggrey and Grand View are permitted to seek and obtain such an injunction, Investcom and Scancom will suffer irreparable harm, the Court will be deprived of its jurisdiction, and the interests of international comity will be adversely affected. To prevent this irreparable harm

and protect its own jurisdiction, the Court should enjoin Aggrey and Grand View from pursuing or obtaining an injunction in the Ghanaian court system that would frustrate or prevent the prosecution of the U.S. Action.

                                                Respectfully submitted,

                                                /s/ Sean Gorman

                                                Sean Gorman
                                                Texas Bar No. 08218100
                                                Southern District of Texas No. 10168
                                                1000 Main Street, Suite 2550
                                                Houston, Texas  77002
                                                (713) 287-2024
                                                (713) 445-2124 - Fax

                                                ATTORNEY-IN-CHARGE FOR
                                                INVESTCOM CONSORTIUM HOLDING
                                                SA AND SCANCOM LIMITED

OF COUNSEL:

**DEWEY & LEBOEUF LLP**

Stephen M. Ryan
Texas Bar No. 24002881
Southern District of Texas No. 31434
1000 Main Street, Suite 2550
Houston, Texas  77002
(713) 287-2025
(713) 445-2125 - Fax

## **CERTIFICATE OF CONFERENCE**

I conferred with counsel for Defendants on November 14, 2008, and counsel cannot agree about the disposition of this application.

/s/ Stephen M. Ryan
_____
Stephen M. Ryan

## **CERTIFICATE OF SERVICE**

A copy of Plaintiffs' Application for Preliminary Injunction was served on all counsel of record listed below by a Notice of Electronic Filing generated by the Southern District of Texas Electronic Case Filing system.

> Phillip L. Sampson, Jr.
> Bracewell & Giuliani LLP
> 711 Louisiana, Suite 2300
> Houston, Texas 77002
>
> William A. Gage
> Buck, Keenan, Gage, Little & Lindley, L.L.P.
> 700 Louisiana, Suite 5100
> Houston, Texas 77002

/s/ Stephen M. Ryan
_____
Stephen M. Ryan